179 So. 908

## MI–LADY CLEANERS v. McDANIEL.

### 3 Div. 245.

Supreme Court of Alabama.

March 24, 1938.

Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

Thos. B. Hill, Jr., and Wm. Inge Hill, both of Montgomery, for appellee.

**BROWN, Justice.**

This is an action on the case by an infant, three years old, suing by next friend, against appellant, Mi-Lady Cleaners, a partnership composed of Emily Stock and Mary Peacock, and the Nehi Bottling Company, a corporation, to recover damages for personal injuries inflicted on the plaintiff in an automobile collision between a Chevrolet automobile, alleged to be the property of Mi-Lady Cleaners, in which plaintiff "was lawfully riding," and a truck of the Nehi Bottling Company, on the intersection of Jefferson Davis and Cleveland avenues in the city of Montgomery.

The complaint stated the case in two counts; the first ascribing plaintiff's injuries to the concurring negligence of the servants, agents, or employees of the respective defendants while acting within the scope of their respective employment; and the second, to the concurring willful or wanton conduct of said agents, while acting within the scope of their respective employment.

The defendants pleaded, separately, not guilty, and the defendant Mi-Lady Cleaners pleaded orally, special pleas, 2, 3, and 4. Plea 2, to count 1, was that the mother of the plaintiff was guilty of negligence which proximately contributed to plaintiff's injury. Plea 3, to count 1, "that the plaintiff, at the time of the accident in which she alleges she was injured, was a non-paying guest in the automobile of the defendant, Mi-Lady Cleaners," and, "4. That at the time of the accident in which the plaintiff alleges that she was injured, the plaintiff was a non-paying passenger or guest in the automobile of the defendant Mi-Lady Cleaners, and that the agent of the Mi-Lady Cleaners, in driving said car, was the mother of the plaintiff."

The judgment entry recites that the plaintiff *orally* demurred to said pleas 2, 3, and 4 of defendant Mi-Lady Cleaners; that the court sustained the demurrer to pleas 2 and 4 and overruled the demurrer to plea 3.

The case was submitted to the jury on both counts of the complaint and plea 3 of the defendant Mi-Lady Cleaners, the court giving the affirmative charge in writing, *with hypothesis,* for the defendant Mi-Lady Cleaners, as to count one at its request. The jury returned a verdict for the plaintiff, on which judgment was rendered against both defendants, from which they separately appealed. However, the only appeal here prosecuted is that of the Mi-Lady Cleaners.

█ The statute, Code 1923, § 9479, which provides, "No demurrer in pleading

can be allowed but to matter of substance, which the party demurring specifies; and no objection can be taken or allowed which is *not distinctly stated in the demurrer,"* clearly contemplates written demurrers which can be made a part of the record, and the rulings of the trial court on oral demurrers to special oral pleas will not be reviewed on appeal. Warble v. Sulzberger Company of America, 185 Ala. 603, 64 So. 361. [Italics supplied.]

■ At the conclusion of plaintiff's evidence the defendant Mi-Lady Cleaners made a motion in writing that the court enter a compulsory nonsuit on stated grounds. This motion was overruled without error.

"It is the settled practice in this State, that the court cannot order a non-suit or compel the plaintiff without his consent to take a non-suit." Saunders v. Coffin, 16 Ala. 421; Hunt v. Stewart, 7 Ala. 525; Duncan, Adm'r, v. Hargrove et al., 22 Ala. 150. See, also, Central Transportation Co. v. Pullman's Palace Car Co., 139 U.S. 24, 11 S.Ct. 478, 35 L.Ed. 55.

■ Said defendant also moved the court to exclude the plaintiff's evidence. This motion was likewise overruled without error. Dorough v. Alabama Great Southern Ry. Co., 221 Ala. 305, 128 So. 602.

■ The evidence is without dispute that the Chevrolet automobile in which the plaintiff was riding at the time of the collision between said automobile and the truck of the other defendant was being driven by the plaintiff's mother, who was at the time an employee of the defendant Mi-Lady Cleaners, and assuming that the evidence warranted an inference to be drawn by the jury that plaintiff's mother was then acting within the scope of her employment, the appellant insists that it was entitled to the affirmative charge, which it requested in writing, and which the court refused.

The contention is that under the common law the parent is immune from liability at the suit of an unemancipated minor child for injuries inflicted on such minor as a proximate consequence of the negligence or wanton or willful wrong of the parent; and in the absence of legal liability on the part of the agent or servant, the principal or master is entitled to immunity.

This doctrine of immunity was considered in the case of Owens v. Auto Mut.

Indemnity Co. et al., Ala.Sup., 177 So. 133,[1] and applied as relieving the insurer of the father from liability on a policy of insurance, where by the terms of the policy, it undertook to hold the insured harmless against *"all sums which the Assured shall become liable to pay."* (Italics supplied.) There it was held that the father being immune from liability at the suit of the minor or his personal representative, in the absence of statute, for negligently or wrongfully causing the death of the insured's child, the wrongful death was not within the coverage of the policy. That case does not support the appellant's contention.

Maine v. James Maine & Sons Company, decided by the Supreme Court of Iowa, December 11, 1924, reported in 198 Iowa 1278, 201 N.W. 20, 37 A.L.R. 161, cited by appellant, is regarded as the pioneer case extending the common-law doctrine of immunity, applicable to the servant, to the master on the ground that the servant not being liable for his negligence or wrongful conduct, under the facts of that case, the master was not liable because the master could not sue the servant and hold him liable.

The comment in the annotation following the report of that case in 37 A.L.R. 165, exposes the want of logic in the court's opinion. It is here reproduced: "This seems to be a case of first impression, and is not without difficulty. The court apparently considers that as, where the liability of the master logically is grounded solely on the negligence of the servant, the master cannot be liable where the servant is not negligent, therefore, if there can be no recovery by the plaintiff against the servant, there can be no recovery against the master, and points out that, in cases where the master is held for the negligence of the servant, he has a recovery over against the servant. It is conceived, however that the liability of the master does not rest at all on the theory of his recovery over against the servant, but on the fact that the servant, in doing the master's business, committed negligence to the injury of a third party. If he committed no negligence the master is logically not liable, in cases which rest solely on the servant's negligence."

It has been repeatedly held here, in cases where the master and servant were sued jointly and the complaint charged the damnifying result solely to the negli-

---

gence or wrongful conduct of the servant, and on the trial the servant was acquitted of negligence or wrongdoing, a judgment against the master could not be sustained. This, on the theory, not that the master was denied the right to recover over against the servant, but on the ground that the sole basis of liability in such case was the negligence or wrongdoing of the servant, imputed to the master under the doctrine respondeat superior, and the acquittal of the servant of wrongdoing, conclusively negatives liability of the master. This is the effect of the holding in New Orleans & Northeastern Railroad Company v. Jopes, 142 U.S. 18, 12 S.Ct. 109, 35 L.Ed. 919, and the dictum in Alabama Great Southern R. Co. v. Ensley Transfer & Supply Co., 211 Ala. 298, 100 So. 342.

There is nothing in the decision that sustains appellant's contention that though the agent or servant of the appellant was guilty of negligence or willful or wanton conduct, while acting within the scope of her employment proximately causing plaintiff's injury, her employer is not liable because of the personal immunity extended to her as the mother of the child by the common law.

We are not of opinion that the holding of the Iowa case is supported by sound reason or authority and we refuse to follow it. That case is in principle contrary to the holding of this court in Clover Creamery Co. v. Diehl, 183 Ala. 429, 63 So. 196.

The applicability of the doctrine respondeat superior rests upon the contract relation of master and servant, and the fact that the damnifying act was done by the servant while acting in and about his master's business—that is, acting within the line and scope of his employment. This being shown, the act of the servant is in law the act of the master. Alabama Power Co. v. Conine et al., 207 Ala. 435, 93 So. 22; Powers v. Williamson, 189 Ala. 600, 66 So. 585; Armstrong v. Sellers et al., 182 Ala. 582, 62 So. 28; 39 C.J. 1268, § 1452.

The law imputes to the master the act of the servant, and if the act is negligent or wrongful proximately resulting in injury to a third person, the negligence or wrongful conduct is the negligence or wrongful conduct of the master for which he is liable, and this rule of liability is not qualified by any special immunity resulting from the domestic relation existing between the person injured and the servant

who committed the negligent or wrongful act. 1 Restatement of the Law of Agency, § 217; 5 Blashfield Automobile Law, Permanent Ed., § 2886; Chase v. New Haven Waste Material Corporation, 111 Conn. 377, 150 A. 107, 68 A.L.R. 1497; Schubert v. August Schubert Wagon Co., 249 N.Y. 253, 164 N.E. 42, 64 A.L.R. 293; Metropolitan Life Ins. Co. v. Huff, 48 Ohio App. 412, 194 N.E. 429; McLaurin v. McLaurin Furniture Co., 166 Miss. 180, 146 So. 877.

Another contention is that there was a failure of proof going to show that the Chevrolet automobile in which the plaintiff was riding at the time of her injury was the property of the defendant Mi-Lady Cleaners and that Mrs. McDaniel, who was driving the car, was engaged in and about the business of her employer, and therefor the court erred in refusing the general affirmative charge requested by said defendant in writing.

The only fact going to show that said defendant was in any way connected with the said automobile is the *voluntary admission of the plaintiff* stated in the bill of exceptions as follows, immediately after the words "Plaintiff's Case": "The plaintiff admitted to the Court and jury the facts alleged in Plea 3, that is to say, that the *plaintiff's child* was between one and two years of age and that it paid nothing for its passage in the automobile of the defendant Mi-Lady Cleaners." (Italics supplied.)

The fact that one or more of the plaintiff's witnesses in their direct examination referred to the Chevrolet automobile as "Mi-Lady's automobile," in describing the situation of the two vehicles, in the light of their whole testimony that they did not know the parties and had no knowledge of the fact of ownership, is clearly without probative force as to the fact of ownership of the Chevrolet. Therefore, unless it can be said that the request of the affirmative charge by the defendant Mi-Lady Cleaners as to the first count of the complaint was an acceptance of plaintiff's voluntary admission and was a waiver of further proof of the ownership of the Chevrolet automobile, there is an absence of proof of such ownership and the defendant, appellant here, was due the general affirmative charge, which it requested in writing.

The averments of the complaint that plaintiff was injured while she "was lawfully riding in an automobile of the defendant Mi-Lady Cleaners," when con-

strued most favorably to plaintiff, imports nothing more than that she was an invitee of the driver of the automobile and a mere licensee of said defendant, and defendant was only liable, if liable at all, for the subsequent negligence of the driver—negligence after the discovery of the peril—or for willful or wanton conduct of the driver proximately causing the injury. First National Bank of Dothan et al. v. Sanders, 225 Ala. 417, 143 So. 578. There is no evidence of subsequent negligence.

The voluntary admission of the plaintiff to the court and jury imports nothing more than that plaintiff was an invitee of her mother, and therefore a mere licensee of defendant. The admission, therefore, did not aid in any way the defendant's defense, nor did it relieve the plaintiff of the burden of showing that the automobile was the property of the defendant, and that the driver of the car was acting within the line and scope of her employment as a servant or agent of the defendant. In the absence of proof of ownership of the automobile by defendant, plaintiff was unaided by administrative presumption in meeting and carrying the burden of proof. Newell Contracting Company v. Berry, 223 Ala. 109, 134 So. 870; Cruse-Crawford Mfg. Co. v. Rucker, 220 Ala. 101, 123 So. 897.

▉ The gravamen of the second count is embodied in the following averments: "That the servants, agents or employees of the said Mi-Lady Cleaners and Nehi Bottling Company, acting within the line and scope of their respective employments, knowing of the presence of the plaintiff, *and that such conduct would likely result in injury and disaster to her, nevertheless wilfully or wantonly, with reckless disregard of the consequence, drove their respective automobiles upon and against one another.*" (Italics supplied.)

Assuming that evidence going to show such frequent use of said intersection and knowledge thereof on the part of the operators of said vehicles, as to impute to them "reason to believe there are persons" or vehicles in exposed position on the intersection, evidence sufficient to charge knowledge of the probable consequences of maintaining great speed without warning, and imputing to them reckless indifference in respect thereto, would sustain the averments of said count, we are at the conclusion that the evidence adduced does not support the count. It falls short of showing such frequent use by the public as to impute to one familiar with the locality knowledge that there were persons or vehicles in exposed position on the crossing, at the time or immediately before the collision, and it shows that Mrs. McDaniel had been in that community only on one occasion before the occurrence. Highland Avenue & Belt Railroad Co. v. Robbins, 124 Ala. 113, 27 So. 422, 82 Am.St.Rep. 153; Louisville & Nashville Ry. Co. v. Heidtmueller, 206 Ala. 29, 89 So. 191; Alabama Power Co. v. Gooch, 221 Ala. 325, 128 So. 793.

There is no evidence showing that Mrs. McDaniel had any knowledge of the approach of the truck until the Chevrolet automobile was about to enter into the intersection of the streets; and the evidence all tends to show that when she discovered the Nehi truck she did what she could to avoid the collision. Salter v. Carlisle, 206 Ala. 163, 90 So. 283.

In Duke v. Gaines, 224 Ala. 519, 140 So. 600, the party injured was a pedestrian crossing the street at the intersection. Wantoness was charged in general terms, not specifically averred, and there was abundant evidence that at the particular hour of the accident, the crossing along both streets was in constant use. The same was true in Mobile Light & Ry. Co. v. Gadik, 211 Ala. 582, 100 So. 837. The defendant Mi-Lady Cleaners was therefor due the affirmative charge, with hypothesis as to the case as a whole.

▉ Written charge 12, given at the instance of the plaintiff, authorized a verdict for the plaintiff against both defendants for simple negligence—a mere breach of duty—on the part of the drivers of the respective vehicles, and was as to appellant in conflict with the affirmative charge with hypothesis given for appellant as to count one.

The other questions argued may not arise on another trial. For the errors noted the judgment must be reversed.

Reversed and remanded.

ANDERSON, C. J., and FOSTER and KNIGHT, JJ., concur.